UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS' STATEWIDE PENSION FUND AND TRUSTEES THEREOF,<br><br>*Plaintiff*,<br><br>v.<br><br>RIVER DRIVE COMPANIES, LLC,<br><br>*Defendant*. | Civil Action No. 17-9047<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff New Jersey Building Laborers' Statewide Pension Fund and Trustees Thereof's ("Plaintiff" or "Pension Fund") Motion for Default Judgment against River Drive Companies, LLC ("Defendant" or "River Drive") pursuant to Federal Rule of Civil Procedure 55(b)(2). For the reasons set forth herein, the motion is **DENIED WITHOUT PREJUDICE**.

**I. BACKGROUND**

This matter arises from Plaintiff's claims for withdrawal liability pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1381. River Drive Construction Co., Inc ("RDC") was subject to a Collective Bargaining Agreement ("CBA") with the New Jersey Laborers District Council and/or its predecessors ("Union") for work performed within the jurisdiction of the Union. Compl. ¶ 7. The CBA required RDC to make fringe benefit contributions on behalf of the Union members at the rates set forth in the CBA. Id. at ¶ 9. The fringe benefit contributions included contributions to the Pension Fund. Id. Consistent with the

1

terms of the CBA, RDC remitted fringe benefit contributions to the Pension Fund uninterrupted on behalf of the Union members employed by RDC until April 30, 2010. Id. at ¶ 10. On or about April 30, 2010, RDC withdrew its recognition of the Union as its employees' bargaining representative. Id. at ¶ 11. By virtue of its withdrawal recognition of the Union by RDC and continued performance of work covered by the CBA without contributing to the Pension Fund, RDC permanently effected a "complete withdrawal" from the Pension Fund within the meaning of § 4203 of ERISA.

The Pension Fund calculated RDC's withdrawal liability as $316,605.00. Id. at ¶¶ 12-13. On or about October 17, 2014, the Pension Fund, pursuant to § 4219(b)(1) of ERISA, prepared a withdrawal liability payment schedule involving 25 quarterly payments and a demand for payment from RDC in accordance with that schedule. Id. at ¶ 14. RDC made the first four quarterly payments. Id. at ¶ 15. The Pension Fund never received the fifth quarterly installment from RDC, however, and on or about April 25, 2016 advised RDC of its failure to remit said quarterly installment and accompanying default of its obligation within the meaning of § 4219(c)(5) of ERISA. Id. The Pension Fund notified RDC that if it did not cure the default within 60 days, it would be in default and the Pension Fund and its Board of Trustees would require immediate payment of the outstanding liability from the due date of the first payment which was not timely made, as allowed by § 4219(c)(5) of ERISA. Id.

RDC failed to cure the default, and the Pension Fund accelerated payment of the remaining withdrawal liability. Id. at ¶ 16. Because RDC failed to demand arbitration to challenge the withdrawal liability assessment within the time parameters set forth under ERISA, the Pension Fund immediately sought payment of the full amount of the withdrawal liability together with all other relief permitted under ERISA. Id. at ¶ 17. RDC disregarded the Pension Fund's demand for

payment and refused to pay the withdrawal liability to the Pension Fund, pursuant to § 4201(a) of ERISA. Id. at ¶ 18. As a result, the Pension Fund commenced a lawsuit in the United States District Court for the District of New Jersey to collect the unpaid withdrawal liability. Id. at ¶ 19. Prior to the conclusion of that lawsuit, the Pension Fund and RDC reached a binding settlement agreement (the "Settlement Agreement"). Id. at Ex. A. The settlement required RDC to recommence payment of its withdrawal liability and make the 21 remaining payments. Id. RDC also agreed to pay interest at 18% of the unpaid amount, 20% of the unpaid amount in liquidated damages, and attorneys' fees and costs incurred in pursuing the lawsuit. Id. Additionally, RDC agreed that in the event it failed to meet its obligations under the settlement, it would waive any and all defenses both as to liability and damages sought in any lawsuit brought by the Pension Fund to enforce the settlement. Id. The settlement provided that, in the event of a default by RDC, the Pension Fund was required to notify RDC, who would have 14 days from receipt of that notice to cure the default. Id.

Shortly thereafter, however, RDC failed to meet its first scheduled payment under the Settlement Agreement, the Pension Fund notified RDC of its default, and RDC failed to cure the default within 14 days. Id. at ¶¶ 24-25. The Pension Fund then commenced a lawsuit against RDC in the Superior Court of New Jersey, Law Division (the "State Lawsuit") to collect the unpaid amounts due under the Settlement Agreement together with liquidated damages, interest, attorneys' fees, and costs. Id. at ¶ 26. On April 13, 2017, judgment was entered in the State Lawsuit for the Pension Fund against RDC in the amount of $522,494.75. Id. at Ex. C. RDC has since failed to satisfy that judgement. Id. at ¶ 27.

Before the conclusion of the State Lawsuit, on or about February 14, 2017, the owners, operators, members, and officers of RDC incorporated a new company—River Drive Companies,

3

LLC (the Defendant in this matter)—to operate out of the same facility as RDC, performing the same or similar operations as RDC. Id. at ¶¶ 37, 39, Ex. B. The same individuals who owned, managed, and oversaw the operations of RDC performed identical tasks for River Drive. Id. at ¶ 36. Additionally, RDC and River Drive maintained their principal places of business and operations at the same addresses, collaborated with each other in aspects of labor and employee relations and operational management and control, used the same equipment and machinery, and performed the same or similar types of services, using the same employees. Id. at ¶¶ 37-39. Based on these facts, the Pension Fund alleges that River Drive and RDC are "commonly controlled" as defined by ERISA, which makes River Drive jointly liable for RDC's withdrawal liability. The Pension Fund brought the instant action against River Drive, filing a two-count complaint on October 24, 2017, alleging (1) unpaid withdrawal liability under § 4201(a) of ERISA and (2) breach of the Settlement Agreement. On February 9, 2018, the Pension Fund filed the instant motion for default judgment against River Drive, seeking unpaid withdrawal liability damages, liquidated damages, interest, attorneys' fees, and costs. To date, River Drive has not filed any opposition to the motion.

## II. LEGAL STANDARD

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred." Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008). Before entering default judgment, the court must: (1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages. See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36

(D.N.J. 2008); Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011). Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

In addition, prior to granting default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

### III. ANALYSIS

#### A. Jurisdiction & Service

The Court has both subject matter jurisdiction over this dispute and personal jurisdiction over Defendant. The ERISA statute grants this Court exclusive subject-matter jurisdiction over the claims. 29 U.S.C. § 1132(e)(1) ("[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a participant, beneficiary, fiduciary"). The Court has personal jurisdiction over River Drive, which is a limited liability company established under the laws of New Jersey. Service of the Summons and Complaint was made by personal service on River Drive on November 8, 2017. ECF No. 5.

#### B. Liability

In its Complaint, the Pension Fund seeks to (1) prove a withdrawal liability claim under ERISA against RDC, (2) hold River Drive jointly liable for RDC's ERISA withdrawal liability, and (3) hold River Drive responsible for RDC's breach of the Settlement Agreement.

##### 1. ERISA Claim

The Pension Fund has pled a claim for withdrawal liability. Under ERISA, "if an employer withdraws from a multiemployer pension plan . . . then the employer is liable to the plan in the amount determined . . . to be the withdrawal liability." 29 U.S.C. § 1381. The fund has an obligation to: (1) determine Defendants' withdrawal liability; (2) notify Defendants of the amount of withdrawal liability; and (3) collect the amount of withdrawal liability from the employer Defendants. Trucking Employees of North Jersey Welfare Fund, Inc.–Pension Fund v. Caliber Auto Transfer, Inc., No. 08-2782, 2009 WL 3584358, at *1 (D.N.J. Oct. 27, 2009) (citing 29 U.S.C. § 1382). The Pension Fund has complied with all the requirements of ERISA here. After RDC effected a complete withdrawal The Pension Fund calculated RDC's withdrawal liability as $316,605.00 and established a payment schedule for the withdrawal liability and demand of payment in accordance with that schedule. The Pension Fund has thus stated a sufficient cause of action for withdrawal liability under ERISA.

**2. Controlled Group Claim**

The Court must also determine whether or not River Drive Companies, LLC and River Drive Construction Co., Inc are commonly controlled under the MPPAA for purposes of withdrawal liability. Under the MPPAA, all trades or businesses under "common control" with a contributing employer are treated as a "single employer." 29 U.S.C. § 1301(b)(1). Such a group of business entities is known as a "controlled group," and businesses within a controlled group are "treated as a single entity under ERISA and are jointly and severally liable for the withdrawal liability of the other entity." See New Jersey Bldg. Laborers' Statewide Pension Fund & Trustees Thereof v. CID Constr. Servs., LLC, No. 15CV3412SRCCLW, 2015 WL 5965627, at *5 (D.N.J. Oct. 14, 2015). ERISA and the MPPAA do not define the terms "under common control" or "trade or business." Instead, these statutes use the Internal Revenue Code's "controlled group" standard

to determine whether two entities are under common control and liable as a single employer. 29 U.S.C. § 1301(b); see also IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 123 (3d Cir. 1986) ("ERISA incorporates the Internal Revenue Code's 'controlled group' standards for determining whether two related corporations are within a controlled group and therefore deemed to be a single employer."). Under the Internal Revenue Code, businesses are held to be in common control if:

> (i) the same five or fewer persons . . . own . . . a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent [that it] is identical with respect to each such organization, such persons are in effective control of each organization.

26 C.F.R. § 1.414(c)-2(c). The term "organization" includes partnerships and corporations. 26 C.F.R. § 1.414(c)-2(a).

Under the Internal Revenue Code's definition, companies are under common control when they are linked by either a parent corporation or group of five or fewer individuals who control 80% of a company's voting shares or profits. 26 C.F.R. § 1.414(c)-2; see, e.g., Doherty v. Teamsters Pensions Trust Fund, 16 F.3d 1386, 1390 n.3 (3d Cir. 1994).

The Pension Fund alleges that the businesses—RDC and River Drive—share common ownership, common business operations, and a common corporate structure. Furthermore, the Pension Fund alleges that the same individual or individuals own, manage, and oversee the operations of RDC and River Drive. The Complaint also alleges that RDC and River Drive both engage in the business of construction. Based on these facts, the Court agrees that RDC and River Drive are under common control and a single employer for the purposes of withdrawal liability.[1]

---

[1] The Court is not satisfied, however, that River Drive is jointly and severally liable for RDC's breach of the Settlement Agreement. Plaintiff has supplied facts that establish joint liability under ERISA's statutory scheme for purposes of its withdrawal liability claim. But it has not sufficiently alleged that the common control of RDC and River Drive entitle Plaintiff to hold River Drive liable

## C. Appropriateness of Default Judgment

Next, the Court must consider: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, 250 F.R.D. at 177. The Court concludes that, in the absence of any responsive pleading and based upon the facts alleged in the Verified Complaint, River Drive does not have a meritorious defense. See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, No. 11-896, 2012 WL 924385, at *1 (D.N.J. Mar. 19, 2012). Second, the Court finds that the Pension Fund will suffer prejudice absent entry of default judgment as it would have no other means of obtaining relief. Finally, the Court finds River Drive acted culpably as it has been served with the Complaint yet has failed to respond to the allegations in the Complaint. Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 Fed. App'x. 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

## D. Monetary Damages

The Pension Fund has requested default judgment with respect to its withdrawal liability claim for unpaid withdrawal liability, interest, liquidated damages totaling 20% of the withdrawal liability, attorneys' fees and costs, and such other legal or equitable relief as the Court deems appropriate. Compl. ¶¶ 46(a)-(e). In support of its claim for damages, the Pension Fund points to the State Lawsuit judgment entered in the amount of $522,494.75, a copy of the Settlement Agreement, an itemized statement of counsel's billed hours, and an affidavit by counsel for the Pension Fund supporting the billed hours document.

---

for RDC's contractual breach that may involve different or additional damages, interest calculations, and/or other penalties than RDC's original withdrawal liability under ERISA. Plaintiff is instructed to brief this issue if it chooses to file an amended motion for default judgment on the breach of contract claim.

Based on these submissions, the Court cannot properly assess the damages, interest, and costs to which Plaintiff is entitled under ERISA. Plaintiff contends RDC's initial withdrawal liability was $316,605.00, but Plaintiff also alleges that RDC made four payments under the original payment schedule before the default that led to the Settlement Agreement and, ultimately, this action. Plaintiff also requests judgment on the unpaid State Lawsuit judgment in the amount of $522,494.75, but it is unclear from Plaintiff's submission how that total amount was calculated, whether it was based on RDC's original withdrawal liability or subsequent breach of the Settlement Agreement, and what, if any, penalties, costs, and interest calculations it includes. While the Court finds River Drive is liable for the unpaid portion of RDC's initial withdrawal liability, it cannot, on the facts before it, determine whether Plaintiff is entitled to amounts as set forth in the Settlement Agreement and/or awarded in the State Lawsuit. In any amended motion for default judgment, Plaintiff must explicitly state the principal amount of damages available under each theory of liability it asserts and the specific penalties, interest, fees, and costs accompanying that principal amount. Plaintiff must also clarify whether it is asserting a statutory basis under ERISA for seeking liquidated damages, interest, and attorneys' fees and costs associated with RDC's initial withdrawal liability.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for final judgment by default **DENIED WITHOUT PREJUDICE**. Plaintiff has 30 days to either file an amended complaint or file a new motion for default judgment that in accordance with this Opinion.

Dated: September 14, 2018.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States District Judge**